Argued April 5, reversed and remanded May 24, petition for rehearing
denied by opinion July 15, 1977

COMMUNITY BANK, *Appellant,*
*v.*
ELL, *Respondent.*
(No. 403-342, SC 24564)
564 P2d 685

[ 418 ]

Ferris F. Boothe, of Black, Kendall, Tremaine, Boothe & Higgins, Portland, argued the cause and filed the briefs for appellant.

Leslie M. Roberts, of Kell, Alterman & Runstein, Portland, argued the cause and filed the brief for respondent.

TONGUE, J.

## TONGUE, J.

This is an action to recover on four checks totaling $78,610. Plaintiff, Community Bank, is the holder of the checks, which were drawn by defendant Ell. The checks were drawn to the order of R. L. Jones and were deposited by Jones in his checking account at the Community Bank. Community presented the checks to Ell's bank for payment. In the meantime, however, Ell had stopped payment on the checks and his bank returned them upaid to Community. This action followed.

Defendant Ell admitted the issuance of the checks and admitted having stopped payment on them. He contended, however, that he had a defense against Jones which he could assert in an action on the checks by Community unless it was a holder in due course. He also contended that Community was not a holder in due course and, as a result, took the checks subject to that defense.

Community contended that as a matter of law Ell had no defense against it as the holder of any of the checks because, if Ell had a defense against Jones, it was merely a setoff arising out of other transactions and was not available as a defense against a transferee of the checks. Community also contended that, as a matter of law, it was a holder in due course because it took the checks for value, in good faith, and without notice of any defenses and that, as such, it took the checks free of defenses which could be asserted against a mere holder.

The trial court ruled that Ell had, as a matter of law, a defense that could be asserted unless Community was a holder in due course and submitted to the jury the questions whether Community took the checks in good faith and without notice of any defense against them. The jury returned a general verdict finding for Ell and against Community on each of the four checks. Community appeals.

[ 419 ]

We hold that the trial court did not err in refusing to hold, as contended by Community, that as a matter of law, Ell had no defenses against the checks within the meaning of ORS 73.3060(2), or in refusing to withdraw the issue of Community's good faith from the jury. We conclude, however, that, as also contended by Community, the trial court did err in submitting to the jury the question whether the bank had notice of a defense against the checks within the meaning of ORS 73.3020(1)(c) and that because of this error, the case must be remanded for a new trial.

*Ell did not fail, as a matter of law, to establish a defense to the four checks.*

■ This action is governed by the provisions of ORS ch 73 (Art 3 of the Uniform Commercial Code). ORS 73.3070 provides:

"* * * * *

"(2) When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense.

"(3) After it is shown that a defense exists a person claiming the rights of a holder in due course has the burden of establishing that he or some person under whom he claims is in all respects a holder in due course."

ORS 73.3060 provides in relevant part:

"Unless he has the rights of a holder in due course any person takes the instrument subject to:

"* * * * *

"(2) All defenses of any party which would be available in an action on a simple contract; * * *.

"* * * * *"

It is not disputed that Community is the holder of the checks in question or that they were signed by Ell. Community was, therefore, entitled to recover on the checks without regard to its status as a holder in due course unless Ell established a defense. If, however, a defense was shown to exist, Community could not recover unless it carried the burden of establishing that it was a holder in due course of these checks.

[ 420 ]

The defense which Ell claims is that a number of checks which Jones gave him, as payment for various loans, were dishonored. Community contends that Ell's claims on account of those dishonored checks arose out of separate and distinct transactions; that they would constitute merely a right of setoff, and that a setoff may not be asserted as a defense in an action by the transferee of a negotiable instrument even though the transferee is not a holder in due course. It requested the court to direct a verdict in its favor on the ground that Ell's claims against Jones did not, as a matter of law, constitute a "defense" to any of the checks.

█ █ Ell contends, however, that a setoff is a "defense" within the meaning of ORS 73.3060(2). He contends, in the alternative, that his claim is one of recoupment and may be asserted against a transferee who is not a holder in due course, even if a setoff may not.[1]

The Uniform Commercial Code does not define "defense" as it is used in this section. The Official Comments to UCC 3-306 (ORS 73.3060) indicate that the language with which we are concerned was intended as a restatement of the first sentence of § 58 of the Uniform Negotiable Instruments Law. 2 ULA 124 (Master ed 1968). That sentence read:

> "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable."

---

[1] In *Rogue River Management Co. v. Shaw,* 243 Or 54, 58-59, 411 P2d 440 (1966), we discussed the distinction between setoff and recoupment:

"* * * 'Recoupment' [which was a defense at common law] is defined to be 'the keeping back and stopping something which is due.' *Krausse v. Greenfield,* 61 Or 502, 507, 123 P 392, Ann Cas 1914B 115. The term is of French origin and means the 'cutting back' of the plaintiff's claim by the defendant. Recoupment is confined to matters arising out of and connected with the transaction upon which the action is brought. 1 Bancroft, Code Pleading § 352.

" 'Set-off' is not synonymous with recoupment only in that it is a 'money demand by the defendant against the plaintiff arising upon contract and constituting a debt *independent of and unconnected with the cause of action* set forth in the complaint. Waterman, Set-Off (2d ed.) § 9.' * * *" (Emphasis theirs)

Although that provision was in force in Oregon until it was replaced by ORS 73.3060(2) upon the enactment of the Uniform Commercial Code, this court never had occasion to consider its applicability to claims of setoff or recoupment. The cases from other jurisdictions are not uniform. The weight of authority under both the Uniform Commercial Code and the earlier Uniform Negotiable Instruments Law appears to hold, however, that the law of setoff within the particular jurisdiction controls and that neither the UNIL nor the UCC was intended to change that law.[2]

■ ORS 80.020, which is not a part of the Uniform Commercial Code and which has been in effect since 1862, provides:

> "In the case of *an assignment* of a thing in action, an action or suit by the assignee *is without prejudice to any setoff or other defense existing at the time of, or before notice of the assignment;* but this section does not apply to a negotiable instrument transferred in good faith and upon good consideration before due." (Emphasis added)

We construe this provision as making available the "defense" of setoff in an action by the transferee of a negotiable instrument, unless the transferee is a holder in due course.[3] The setoff or other defense,[4] to

---

[2] For discussion of the cases prior to and under the Uniform Negotiable Instruments Law see Britton, Bills and Notes 449-451, § 153 (2d ed 1961); Morris, *The Use of Set-Off, Counterclaim and Recoupment: Availability Against Commercial Paper,* 62 W Va L Rev 141 (1960). Cases decided under the Uniform Commercial Code and holding that the local law of setoff controls include *United Overseas Bank v. Veneers, Inc.,* 375 F Supp 596, 608 (D Md 1974), and *Srochi v. Kamensky,* 118 Ga App 182, 162 SE2d 889, 892 (1968). *But see Bank of Wyandotte v. Woodrow,* 394 F Supp 550 (WD Mo 1975).

[3] *Accord: Turkenkoph v. Te Beest,* 55 NM 279, 232 P2d 684 (1951). At trial, Community took the position that ORS 80.020 had no application at all to negotiable instruments. On appeal it has abandoned this position and contends, instead, that the statute creates a standard different from, and more favorable to, the holder than that of a holder in due course. The success of that contention in this case depends on the success of Community's argument that, as a matter of law, it took the checks in good faith. As we hold, *infra,* that the issue of good faith was properly submitted to the jury, we need not address the technical issue of statutory construction raised by Community.

[4] In *Rogue River Management Co. v. Shaw, supra* note 1, we held (at 243 Or 60-61) that recoupment was an "other defense" within the meaning of this provision.

be available as a defense in an action by a transferee, must exist at the time of or before the drawer of a check receives notice of the transfer or assignment of the check, as by deposit in a bank.

To determine whether Ell as the obligor had such a defense to the four checks, and at the appropriate time, we must consider the evidence in more detail.

Jones was in the business of wholesaling used cars. He obtained a significant portion of his financing through a "flooring" arrangement with Ell. That is, Ell would advance money to Jones for periods of 30 days. As security for these advances, Jones would deliver to Ell the documents of title to specific automobiles which served as collateral and would execute a trust receipt. Ell gave his checks to Jones when making these advances.

When a car covered by a trust receipt was sold, or within 30 days if sooner, Jones would repay the loan to Ell, plus a "flooring fee," with his check and Ell would release the title to the automobile and make an appropriate notation on the trust receipt. At Ell's request, Jones gave him a separate check for the repayment of each loan secured by an individual automobile.

Jones and Ell did business in this fashion almost daily for a considerable period. It was quite common for Jones to repay several loans by giving Ell his checks in appropriate amounts and, on the same day, to "floor" several additional vehicles with Ell and to receive Ell's check or checks as advances.

Jones maintained his checking account with Community. Because of the financing pattern which we have described, an examination of the records of his account would have disclosed that a significant portion of Jones' daily bank deposits consisted of checks written by Ell and that a significant portion of the checks written by Jones were payable to Ell.

During the same period Community permitted

[ 423 ]

Jones to maintain his account in a "potential over-draft" position. That is, each morning Jones or his bookkeeper would call the bank to determine the amount which would be necessary to cover the checks drawn on his account which had come into the bank on the previous day. Later in the day Jones would make a deposit sufficient to cover those checks. The bank would credit the deposit immediately and the checks would be paid. The amount of this daily potential overdraft varied during 1973 from approximately $40,000 to more than $100,000.

On Thursday, December 13, 1973, Mr. Shideler, a vice-president of Community Bank, was requested by its president to investigate Jones' account in connection with a request by Jones for a larger line of credit. Mr. Shideler, upon detailed examination of the account on Friday, December 14, discovered the above pattern of large daily potential overdrafts and also noted that much of the activity in Jones' account consisted of checks received from Ell and checks written to Ell. This situation had, he testified, the indications of a "check-kiting" operation in progress. That same day he called the matter to the attention of Mr. Brokenshire, the president of the bank.

Mr. Brokenshire and other bank personnel discussed and considered the matter over the week end and on Monday, December 17, Mr. Brokenshire gave instructions to his subordinates at the bank that checks written by Jones were not thereafter to be paid unless there were collected funds in the Jones' account to cover them, Ell's bank was notified of this decision and, in turn, notified him on Tuesday, December 18, that checks written by Jones were being, or would be, returned.

Ell responded by stopping payment on the four checks involved in this litigation. All four of these checks represent loans given on trust receipts, according to the usual practice of Jones and Ell, before either had any notice that Community intended to begin

[ 424 ]

returning Jones' checks. Two of these checks were issued by Ell and deposited by Jones on Friday, December 14; the other two were issued and deposited on Monday, December 17.

Beginning on Monday, December 17, Community dishonored a number of checks written by Jones to Ell on and before December 17 and deposited by Ell in his account in another bank. These checks, totaling approximately $103,000, were returned to Ell through normal banking channels. Upon Community's refusal to pay Jones' checks until they were covered by collected funds in his account, Jones' financing balloon collapsed. His checks to Ell which Community dishonored have never been paid. They constitute the defense of setoff or recoupment which Ell claims in the present action.

It is clear that if Jones were to bring an action against Ell on the four checks involved in this case, Ell could assert as a defense, by way of setoff or recoupment, his claims arising out of Jones' dishonored checks. Because, however, this is an action by Community against Ell and is controlled by the provisions of the statutes discussed above, the question to be decided in this case is whether these claims existed at the time that Ell received notice that his December 14 and December 17 checks to Jones had been assigned or transferred by Jones to Community by the deposit of such checks in that bank.

■ Community contends that Ell's defenses, to be available in this action, must have existed at the time that Community became a holder of his checks, and that Ell had no defenses at that time. In our opinion, this contention does not give proper effect to the language of ORS 80.020. The time a transferee becomes a holder is, as we discuss below, the time to determine whether the holder has notice of defenses and is, therefore, disqualified as a holder in due course for the purposes of ORS 73.3060 and 73.3070. Because of the provisions of ORS 80.020, however, as previous-

ly discussed, the defenses that can actually be asserted against such a holder include those that come into existence after the transfer but before the drawer of the checks, as the obligor, has notice of the transfer or assignment.

■ In our view, the trial court could not properly hold, as a matter of law, that no defenses to Ell's checks came into existence before Ell had notice that Jones had assigned or transferred these checks to Community by the deposit of the checks. The time of that notice is disputed. Ell contends that the only notice disclosed by the evidence is a demand letter from Community which Ell received on April 10, 1974. If, however, Ell examined his bank statements, he must have known that Jones made a practice of depositing the loan checks immediately. Indeed, he testified that he "assumed" that Jones would deposit the loan checks on the day they were delivered to him.

Based upon this evidence it may follow that Community was entitled to a ruling that Ell had no defense, as a matter of law, to the two checks from Ell to Jones dated December 14 because he must have had notice of the deposit of those two checks prior to the time on December 17 when Community began dishonoring Jones' checks to Ell.[5] No such ruling was requested, however. Community moved instead for a directed verdict covering all four checks, and on other grounds. It was not error to deny that motion. The jury could have found that checks given by Jones to Ell, totaling up to $33,975, were dishonored by Community on December 17 before Ell must be held to have notice that at least the two checks he delivered to Jones on that day had been deposited.

---

[5]This assumes that the time of dishonor is the time when the defense arises. We are aware of the provisions of ORS 73.1220(3):

"(3) A cause of action against a drawer of a draft [including a check; ORS 73.1040(2)] * * * accrues upon demand following dishonor of the instrument. * * *"

The parties have not argued the applicability of that statute to this case, and we express no opinion on that point.

■ It is true that the trial court did not submit that issue to the jury, but instead ruled as a matter of law that Ell had "established a defense." Community never asked that the issue be submitted to the jury, but took the position that as a matter of law Ell had no defenses to any of the four checks. It follows that Community is not now in a position to complain about the trial court's failure to submit that issue to the jury or to rule that Ell had no defense as a matter of law to two of the four checks.

*Community did not establish, as a matter of law, that it took Ell's checks in good faith.*

■ Because the court ruled that Ell had established a defense, and because, under the circumstances just described, the court did not err in that ruling, the burden was on Community to prove that it was in all respects a holder in due course. ORS 73.3070(3). A holder in due course is:

"* * * a holder who takes the instrument

"(a) For value; and

"(b) In good faith; and

"(c) Without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." ORS 73.3020(1)

The trial court held, as a matter of law, that Community took Ell's checks for value and that holding is not questioned here. The only relevant issues as to the bank's status as a holder in due course are whether it took each check in good faith and whether it took each check "without notice * * * of any defense against * * * it on the part of any person." Community has assigned as error the trial court's refusal to withdraw each of these issues from the jury.[6]

■■ The trial court did not err in refusing to withdraw the issue of Community's good faith from the jury's consideration. Good faith means "honesty in fact in

---

[6] At trial Community raised these questions by separate motions for a "directed verdict" on each issue. We treat these motions as requests to remove these separate issues from the jury's consideration.

the conduct or transaction concerned." ORS 71.2010(19). The appropriate standard is a subjective one, looking to the intent or state of mind of the party concerned.[7] The question is generally one for the jury unless only one inference from the evidence is possible.[8] Although mere negligence or failure to make the inquiries which a reasonably prudent person would make does not of itself amount to bad faith, if a party fails to make an inquiry for the purpose of remaining ignorant of facts which he believes or fears would disclose a defect in the transaction, he may be found to have acted in bad faith.[9]

In the present case, the evidence disclosed that responsible officials at the bank knew, by Friday, December 14, that Jones' account showed indications that he was using his dealings with Ell to "kite" his checks. There was also evidence that when a bank suspects that a customer is engaged in kiting checks, the way to determine whether the suspicions are well founded is to refuse to pay his checks until they are covered by collected funds. The jury could have found that on Friday, December 14, the bank was in possession of facts which it knew would lead, or probably would lead, to that treatment of Jones' account. It is undisputed that the bank made no inquiries of Ell before actually taking that action on Monday, December 17. In our opinion, the jury could consider this evidence in light of the bank's long-standing practice of permitting Jones to maintain his large potential overdrafts and could have found, based upon all of this evidence, that when Community accepted Jones' de-

---

[7] *Eldon's Sup. Fresh Stores, Inc. v. Merrill Lynch, Etc.,* 296 Minn 130, 207 NW2d 282, 287 (1973); *General Investment Corp. v. Angelini,* 58 NJ 396, 278 A2d 193, 196-97 (1971).

[8] *See Northside Bank of Tampa v. Investors Acceptance Corp.,* 278 F Supp 191, 192 (WD Pa 1968); *People's Bank of Aurora v. Haar,* 421 P2d 817, 820-21 (Okla 1966).

[9] *Slaughter v. Jefferson Federal Savings & Loan Ass'n,* 361 F Supp 590, 599 (DDC 1973); *Mid-Continent Nat. Bk. v. Bank of Independence,* 523 SW2d 569, 574-75 (Mo App 1975); *General Investment Corp. v. Angelini, supra* note 7, at 197.

posit of Ell's checks it did not act in good faith, but was attempting to place on Ell the probable loss resulting from Jones' operations, in which the bank had acquiesced.[10]

Because we hold that there was a question for the jury as to Community's good faith, it follows that the trial court did not err in refusing to direct a verdict for Community on the ground that it was a holder in due course as a matter of law.

*Community established, as a matter of law, that it took Ell's checks without notice of any defenses against them.*

As previously stated, however, it is also contended by Community that the trial court erred in submitting to the jury the question whether the bank had notice of "any defense against" the checks in question for the purpose of determining whether it was a holder in due course under ORS 73.3070.

It is clear, for reasons previously stated, that on Friday, December 14, when Community became a holder of the first two checks Ell did not in fact have any defense against those checks of which the bank could have had notice. None of Jones' checks to Ell had as yet been dishonored and Ell had received all the security which he required for the advances represented by the checks.

As to the two checks deposited on December 17, however, the question requires closer analysis. On that date the bank began to dishonor checks drawn on Jones' account, including some which he had given to Ell in repayment of prior loans. Unlike the "defenses" which are available against one who is not a holder in due course under ORS 73.3060 and 80.020, which include any that could be asserted in an action on a simple contract, notice of defenses only disqualifies a

---

[10]Evidence of similar bank practices was held to be evidence of bad faith in *First State Bank & Trust Co. of Edinburg v. George,* 519 SW2d 198 (Tex Civ App 1974), and *Oklahoma Nat. Bank v. Equitable Credit Finance Co.,* 489 P2d 1331 (Okla 1971).

party from becoming a holder in due course under ORS 73.3020 if the defenses are "against" the instrument.[11] When Community became the holder of the two checks on December 17, Ell had no defenses "against" those checks in the sense intended by that statute. The checks were regular on their faces and represented bona fide transactions in which Ell had received all he bargained for.

Ell contends that all of the loans and repayments were part of the same transaction and that dishonor of any of Jones' checks would be a defense in the nature of recoupment to an action by Jones on any of Ell's checks. He points to the following provision in the form of trust agreement used in connection with his loans to Jones:

> "If debtor is or shall hereafter be indebted to secured party upon any other indebtedness than is described in this agreement, the security interest hereby granted to secured party shall also secure the payment of all such other indebtedness."

There is no showing that Community had any notice of this provision. Moreover, all of the other relevant evidence indicates that each loan was intended to be, and was treated and considered by Ell and Jones as a separate transaction. Ell so testified.

Ell relies on *Oklahoma Nat. Bank v. Equitable Credit Finance Co.,* 489 P2d 1331 (Okla 1971). In that case the defense asserted was failure of consideration with respect to the particular check involved. The

---

[11] ORS 73.3040(1) provides:

"The purchaser has notice of a claim or defense if:

"* * * * *

"(b) The purchaser has notice that the obligation of any party is voidable in whole or in part, * * *."

The Official Comments to the corresponding section of the Uniform Commercial Code provide:

" 'Voidable' obligation in paragraph (b) of subsection (1) is intended to limit the provision to notice of defense which will permit any party to avoid his original obligation on the instrument, as distinguished from a set-off or counterclaim." 2 ULA 104 (Master ed 1968).

defendant, Equitable, had stopped payment on a check representing a loan on accounts receivable which it contended were fictitious. The court held that the bank had reason to know of Equitable's defense because it knew that its customer, Equitable's debtor, had been writing checks to Equitable which were supposed to represent collections on its assigned receivables and yet was covering those checks by depositing checks from Equitable.

There is, however, a crucial difference in this case. In the Oklahoma case the court held that the bank had reason to know that the security given for the very check in question was nonexistent. In the present case there is no question but that Jones provided Ell with the agreed-upon security for the checks in question. The evidence discloses no defenses against the checks of which Community could have had notice at the time it became a holder. It was, therefore, error for the trial court to submit this issue to the jury.

In summary, the trial court did not err in refusing to hold, as a matter of law, that Ell had failed to establish any defense which could be asserted against a holder who was not a holder in due course. Nor did the trial court err in refusing to withdraw from the jury the question of Community's good faith. It was error, however, to submit to the jury the question whether Community, when it became a holder of Ell's checks, had notice of any defenses against those checks. Because this issue was erroneously submitted to the jury, Community is entitled to a new trial.

Reversed and remanded.