David QUINTO, Plaintiff,

v.

**LEGAL TIMES OF WASHINGTON, INC., et al., Defendants.**

Civ. A. No. 80–1005.

United States District Court, District of Columbia.

Jan. 26, 1981.

David Quinto, pro se.

E. Fulton Brylawski, J. Michael Cleary, Edwin Komen, Brylawski & Cleary, Washington, D. C., for defendants Beckwith and Legal Times.

## MEMORANDUM

FLANNERY, District Judge.

This suit for copyright infringement comes before the court on cross-motions for summary judgment. Defendants Stephen A. Glasser and Lynn S. Glasser have filed a motion to dismiss for lack of personal jurisdiction. The Glassers, the *Legal Times*, and defendant David C. Beckwith have filed a motion to dismiss for lack of subject matter jurisdiction.

*Facts*

Accepting defendants' version of the facts, in late July or early August, 1979, plaintiff, a second-year student at Harvard Law School, decided to write an article describing the experiences Harvard Law students had while employed by law firms in the summer of 1979. Plaintiff prepared the article by interviewing his friends and recording their remarks in a notebook. Some of his notes included extensive quotations.

Plaintiff then wrote an article based on these interviews and submitted it to the editor-in-chief of the *Harvard Law Record*, a newspaper published by students at Harvard Law School. The article consisted primarily of descriptions of the perquisites law firms provided to their summer associates.

Minor editorial changes were made and the final product appeared on the front page of the September 21, 1979 *Harvard Law Record* under the title of "HLS Clerks Get Offers They (Sigh) Can't Refuse." The by-line read "By Dave Quinto".

The article did not bear a separate copyright notice. However, the masthead of the newspaper carried a copyright notice in the name of the Harvard Law School Record Corporation which satisfied the blanket notice provision contained in 17 U.S.C. § 404(a).

The *Legal Times* published a verbatim copy of plaintiff's article in its October 15, 1979 issue. The only difference in the article as it appeared in the *Harvard Law Record* and in the *Legal Times* is that the *Legal Times* deleted two of the seventeen paragraphs, apparently so that the article would fit on the page.

Plaintiff registered a claim of copyright in his article with the United States Copyright Office on December 6, 1979 in order to preserve his legal remedies under the Copyright Act.

*Glassers' Motion to Dismiss for Lack of Personal Jurisdiction*

Defendants Stephen A. Glasser and Lynn S. Glasser are corporate officers and part-owners of the parent company of the *Legal Times*. They reside in New Jersey and exercise control over some aspects of the newspaper's operations. Plaintiff seeks to find them liable for the alleged copyright infringement on the grounds they benefited from it and had the ability to prevent it. *See Warner Bros., Inc. v. O'Keefe*, 468 F.Supp. 16, 19 (S.D.Iowa 1978).

The only basis for this court exercising personal jurisdiction over the Glassers is the District of Columbia Long-Arm Statute, D.C.Code § 13–423. The statute provides in relevant part, as follows:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia;

. . . . .

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods, used or consumed, or services rendered in the District of Columbia;

. . . . .

■ While the Glassers may have conducted substantial business in the District of Columbia, their activities were conducted on behalf of the corporation. There is no allegation that they conducted any business as individuals, and as a result, sections (a)(1) and (a)(4) of the Long-Arm Statute are not available to plaintiff as a basis for jurisdiction. *Security Bank, N.A. v. Tauber*, 347 F.Supp. 511, 516 (D.D.C.1972). Similarly, the Glassers' failure to supervise the activities of the *Legal Times* in a manner which would have prevented republication of plaintiff's article cannot be considered acts or omissions in their individual capacities, since any actions they might have taken would have been in their official capacities. Thus jurisdiction cannot be conferred by section (a)(3).

Accordingly, the Glassers' motion to dismiss for lack of personal jurisdiction is granted.

### Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendants contend that the court lacks subject matter jurisdiction over this action because of plaintiff's failure to record a transfer of copyright in the Copyright Office as required by § 205(d) of the Copyright Act, 17 U.S.C. That section provides that

No person claiming by virtue of a transfer to be the owner of a copyright or any

exclusive right under copyright is entitled to institute an infringement action under this title until the instrument of transfer under which such person claims has been recorded in the Copyright Office, but suit may be instituted after such recordation on a cause of action that arose before recordation.

According to defendants, plaintiff must claim a copyright in his work by virtue of a transfer because the *Harvard Law Record* owned the copyright to the article, either because it was a work for hire or because plaintiff assigned his copyright to the *Record* and later ratified the assignment. It is not disputed that when the *Record* executed a document assigning its copyright in plaintiff's article to him, he did not record the transfer.

Section 201(b) of the Copyright Act states that in the case of a work made for hire, the employer or person for whom the work was prepared owns the copyright. In contrast, under § 201(c) the copyright to a separate contribution to a collective work vests initially in the author. Thus the court must decide whether Quinto's article is a work for hire or a contribution to a collective work.

A comprehensive treatment of the difference between a contribution to a collective work and a work for hire is found in *Picture Music, Inc. v. Bourne, Inc.*, 314 F.Supp. 640, 649–52 (S.D.N.Y.1970), *aff'd* 457 F.2d 1213 (2d Cir.), *cert. denied*, 409 U.S. 997, 93 S.Ct. 320, 34 L.Ed.2d 262 (1972). The court listed numerous factors bearing on the distinction, including whether the author was paid for his work; whether he created the work of his own volition; whether the author was a party to an express contract for hire, especially one restricting his freedom to engage in other writing activities for hire; whether the author maintained regular working hours, and whether the creative work occurred at the employer's place of business.

■ It would be difficult to envision a case where it is more clear than it is here that the article was a contribution to a collective work and not a work for hire. It

is uncontested that plaintiff received no compensation for his article, that the idea to write it was entirely his, that he was not a party to an express contract for hire and was free to engage in other writing activities for pay, that he had no regular working hours and that neither the interviews nor the initial writing occurred at the *Record's* offices.

To prevail on this motion, defendants must show that the *Record* owned the copyright to plaintiff's article. To do so, they depend on an assignment of copyright from the *Record* to Quinto. It came about because plaintiff thought the Copyright Office might take the position that his article was a work for hire, in which case he would need the assignment to register his copyright. To counter this possibility, on October 28, 1979, plaintiff and the *Record* executed a document assigning the *Record's* entire interest in plaintiff's article to him. Plaintiff then represented to defendants and to the Copyright Office that he had received such an assignment. However, the Copyright Office viewed his article as a contribution to a periodical and returned the assignment document because it was unnecessary. Defendants now contend that the assignment and the representations made to them constitute a ratification and confirmation of the validity of the *Record's* copyright in the article.

However, under § 201(c) the assignment from the *Record* to Quinto had no legal effect because the *Record* at no time owned the copyright to Quinto's article and thus it had no rights to assign. Plaintiff's article was a contribution to a collective work, and as such, he owned the copyright to it from the moment it was fixed in tangible form.

Copyright in each separate contribution to a collective work is distinct from copyright in the collective work as a whole, *and vests initially in the author of the contribution. In the absence of an express transfer of the copyright* or any rights under it, the owner of copyright in the collective work is presumed to have acquired only the privilege of reproducing and distributing the contribution as part

of that particular collective work, any revision of that collective work, and any later collective work in the same series.

17 U.S.C. § 201(c) (emphasis added).

There was no express transfer of copyright from Quinto to the *Record,* so the *Record* had no rights in the article except those pertaining to the collective work. It is immaterial that plaintiff did not record the assignment from the *Record* to him, since plaintiff's claim to the copyright was by virtue of *authorship* and not by virtue of *transfer.* Therefore, defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

*Defenses*

■ The defendants first claim that the plaintiff is not the copyright proprietor of the extensive quotations used in his article and therefore he is not the proper party to bring this suit. Regardless of who owns the copyright in each of the quoted passages in the article, there can be no doubt that Quinto owns the copyright in his compilation of the quotations.

A "compilation" is a work formed by the collective assembling of preexisting materials or of data that are selected, coordinated or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.

17 U.S.C. § 101.

■ An original compilation such as Quinto's is copyrightable even though the facts or data compiled are in the public domain and not copyrightable. Only "industrious collection," not originality in the sense of novelty is required. *Schroeder v. William Morrow & Co.,* 566 F.2d 3, 5 (7th Cir. 1977). Even if Quinto did not own the copyright to the quotations in his article, he had permission to use the quotations and his copyright in the compilation protects his selection, arrangement, and ordering of them.

Defendants next claim they are protected by the fair use defense. As they interpret that defense, copying is not considered an infringement of a copyright when the copying is for news reporting. Examination of the statute shows otherwise:

... the fair use of a copyrighted work, ... for purposes such as criticism, comment, news reporting, ... is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

■ Use of copyrighted material in a news story may constitute a fair use, but only if the court deems it so after considering the four factors listed in the statute. Before turning specifically to the four factors, it should be noted that the legislative history of § 107 clearly states that the statute is not intended to change the present judicial doctrine of fair use in any way. H.Rep.No.94–1476, 94th Cong., 2d Sess. at 65, U.S.Code Cong. & Admin.News 1976, p. 5659.

■ The admitted reprinting of approximately 92% of plaintiff's story precludes the fair use defense under prior law. It is well settled that the fair use defense is based on a concept of reasonableness and that it is unavailable where there has been extensive verbatim copying or paraphrasing such as in this case. *Benny v. Lowe's Inc.*, 239 F.2d 532 (9th Cir. 1956), *affirmed by an equally divided Court*, 356 U.S. 43, 78 S.Ct. 667, 2 L.Ed.2d 583 (1958); *Rosemont Enterprises, Inc. v. Random House, Inc.*, 366 F.2d 103 (2d Cir. 1966), *cert. denied*, 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967); *Walt Disney Productions v. Air Pirates*, 581 F.2d 751 (9th Cir. 1978), *cert. denied*, 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979).

Consideration of the four factors listed in § 107 also militates against allowing a fair use defense in this case. First, the republication was for commercial rather than educational purposes. Second, almost the entire article was reprinted. Finally, the reprinting eliminated the possibility that plaintiff could sell his article to a legal newspaper such as the *Legal Times*, and for all practical purposes those newspapers represented the entire market for his article. As Judge Kaufman recently stated, "The fair use doctrine is not a license for corporate theft, empowering a court to ignore a copyright whenever it determines the underlying work contains material of possible public importance." *Iowa State University Research Foundation, Inc. v. American Broadcasting Co., Inc.*, 621 F.2d 57, 61 (2d Cir. 1980).

■ Defendants also assert that they have a First Amendment right to reprint plaintiff's article. Conflicts between interests protected by the First Amendment and the copyright laws have been resolved by application of the fair use doctrine. *Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 95 (2d Cir. 1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978). The distinction between ideas, news events, and factual developments, all of which are not copyrightable, and expressions of the same, which are copyrightable, serves to accommodate the competing interests of copyright and the First Amendment. Copyright protects the author's manner of expression, his analysis or interpretation of events, the way he structures his material and marshals facts, his choice of words, and the emphasis he gives to particular developments. 558 F.2d at 95–96. The defendants in this case cannot claim First Amendment protection because they have not merely used the newsworthy facts in Quinto's article, they have appropriated his expression of those facts. *Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d at 96; *Sid & Marty Krofft Television v. McDonald's Corp.*, 562 F.2d 1157, 1170–71 (9th Cir. 1977). *See generally* Nimmer, Does Copyright Abridge The First Amendment Guar-

antee of Free Speech and Press? 17 U.C.L. A.L.Rev. 1180 (1970).

*Summary Judgment*

Section 404(b) of the Copyright Act provides that where a person named in a single copyright notice applicable to the entire work is not the owner of the copyright in a separate contribution, the case is governed by § 406(a). Section 406(a) provides in relevant part

Where the person named in the copyright notice on copies or phonographs publically distributed by authority of the copyright owner is not the owner of [the] copyright, the validity and ownership of the copyright are not affected. In such a case, however, any person who innocently begins an undertaking which infringes the copyright has a complete defense to any action for such infringement if such person proves that he or she was misled by the notice and began the undertaking in good faith under a purported transfer or license from the person named therein . . .[1]

Thus the statute places the burden on defendants of showing they were misled and acted in good faith.

The issues before this court on cross-motions for summary judgment are whether the *Legal Times* was misled by the general copyright notice and whether it reprinted Quinto's article innocently and in good faith. As such this is a case of first impression. No cases have interpreted § 406(a), which was part of the extensive 1976 copyright revision, and the Act does not define goodwill or any of the other key terms at issue here. In addition, § 406 has no counterpart in prior law and the legislative history is not dispositive of the issues before the court.

The affidavit of David C. Beckwith, managing editor of the *Legal Times*, sets out

the facts which the court must accept as true for purposes of this summary judgment motion.[2] According to the affidavit, in late 1978 or early 1979 Beckwith had a series of telephone conversations with the then editor-in-chief of the *Harvard Law Record*, Tammy Jacobs. She purportedly gave the *Legal Times* "general permission" to republish materials originally published in the *Record*.

Beckwith states he also had a telephone conversation with Ms. Jacobs' successor, Jorie Roberts, on September 20, 1979 "during which mutual promises of future cooperation between the *Harvard Law Record* and the *Legal Times of Washington* were made." He decided to republish the Quinto article after reading it in the September 21 issue, and "assumed that the previously granted general republication permission would be sufficient to permit the proposed republication of the article by the *Legal Times*.

Although assuming he had permission to republish, Beckwith unsuccessfully attempted to contact Ms. Roberts of the *Record* by telephone on four occasions prior to reprinting the Quinto article. On one occasion he left a message with an automatic recording device at the *Record* office that he wished to reprint the article unless there were any objections. Beckwith did not receive an answer to his message.

It is important to note what Beckwith did not do. First, he does not claim to have ever received specific permission from the *Record* to reprint Quinto's article. Second, he made no attempt to ascertain whether the Harvard Law School Record Corporation owned the copyright to the article. Third, he does not contend that the *Legal Times* ever reprinted any articles from the *Record* other than Quinto's during the period Beckwith claims he had permission to do so. Finally, it is undisputed that Beckwith made no attempt to contact the plaintiff,

---

1. As a result, a separate contribution that does not bear its own copyright notice and is published in a collective work bearing a general notice is treated the same as if it has been published with the wrong name in the notice. H.Rep.No.94–1476 at 146.

2. Beckwith was the only employee of the *Legal Times* who dealt with the *Harvard Law Record* with respect to the Quinto article.

who was clearly listed as the author of the article.

In deciding whether Beckwith's actions constitute good faith under § 406(a), the court must consider the purpose of both the Copyright Act and § 406. According to the Supreme Court, "to encourage people to devote themselves to intellectual and artistic creation, Congress may guarantee to authors and inventors a reward in the form of control over the sale or commercial use of copies of their works." *Goldstein v. California*, 412 U.S. 546, 556, 93 S.Ct. 2303, 2309, 37 L.Ed.2d 163 (1973). Congress made such a guarantee by enacting the copyright laws.

Section 406(a) has two purposes: to avoid technical forfeitures of the copyright owner's rights when the copyright notice is not published in the owner's name and to protect innocent users of copyrighted material who rely on erroneous information. H.Rep.No.94–1476 at 149. When these goals conflict, the statute favors the copyright holder. For example, even an innocent, good faith infringer who was misled by the copyright notice is not protected if a search of the Copyright Office records would have revealed that the owner was someone other than the person named in the notice. H.Rep.No.94–1476 at 149.

The court must assume that Beckwith honestly believed he had permission to reprint Quinto's article. However, if honesty in fact were the only element of the 406(a) good faith requirement, anyone could infringe a contribution to a collective work if he could show an honest belief—however unreasonable that belief might be—that he had permission to republish from the newspaper or magazine in which the article appeared.

Given that both § 406(a) and the Copyright Act as a whole emphasize protecting the copyright holder, such a reading would defeat the purpose of the statute. Therefore, the court concludes that good faith in the context of this case entails not only honesty in fact, but reasonableness as well. Other bodies of law take the same approach. The Uniform Commercial Code defines good faith in the case of a merchant as honesty in fact and the observance of reasonable commercial standards, U.C.C. § 2–103(1)(b), and commentators have noted that good faith and reasonableness are the basic principles running throughout the code. *See, e. g.*, Farnsworth, Good Faith Performance and Commercial Reasonableness under the Uniform Commercial Code, 30 *U.Chi.L.Rev.* 666 (1963). The concept of good faith is also utilized in § 2(b) of the Robinson-Patman Act, 15 U.S.C. § 13(b), which allows a seller to practice price discrimination if his price is set in good faith to meet competition. The Supreme Court has interpreted that provision to require the seller to "show the existence of facts which lead a reasonable and prudent person to believe that the granting of a lower price would in fact meet the equally low price of a competitor." *United States v. United States Gypsum*, 438 U.S. 422, 451, 98 S.Ct. 2864, 2880, 57 L.Ed.2d 854 (1978) *quoting FTC v. A. E. Staley Mfg. Co.*, 324 U.S. 746, 759–760, 65 S.Ct. 971, 977, 89 L.Ed. 1338 (1945). Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a), provides a good faith defense for "controlling persons." Courts have, with considerable unanimity, required that to satisfy good faith the controlling person must have maintained a "reasonable" system of supervision. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1134–35 (9th Cir.) *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975); *Carpenter v. Harris, Upham & Co., Inc.*, 594 F.2d 388, 394 (4th Cir.), *cert. denied*, 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979).

On the facts of this case, Beckwith, a member of the bar[3] acting on behalf of a legal newspaper, could not reasonably rely upon the vague oral permission given him to reprint any article from the *Harvard Law Record* as constituting permission to republish the Quinto article, par-

---

**3.** Beckwith is admitted to practice in Texas and the District of Columbia and was the editor of the law section of *Time* magazine.

ticularly since the permission was given by a previous editor at least nine months before the Quinto article was ever written. Nor was it reasonable for him to rely upon "mutual promises of future cooperation" made during the September 20, 1979 telephone conversation with the *Record's* editor-in-chief as constituting permission. Finally, the lack of an answer to the telephone message Beckwith left with the automatic answering device did not create reasonable grounds for believing he had permission to reprint the article.

A second, and more important reason for denying Beckwith the defense afforded by § 406(a) is that the statute requires the defendant to have been misled by the blanket copyright notice in the name of the Harvard Law School Record Corporation. It is difficult to imagine how the notice could have been so misleading that Beckwith did not even have a duty to inquire who owned the copyright in the article, since the article clearly bore Quinto's name. In fact, it might be argued that ambiguity as to who owned the copyright—which arose because of the blanket notice—*increased* Beckwith's duty to inquire about ownership, particularly since the *Legal Times* had never before reprinted an article from the *Harvard Law Record*. At a minimum Beckwith had a duty to inquire whether the *Record* owned the copyright to Quinto's article in order to claim he was misled and acted in good faith.[4]

Requiring that a party who obtains a vague, oral permission to reprint articles from a student newspaper must inquire as to who owns the copyright in the article it wishes to reprint in order to successfully assert a § 406(a) defense is consistent with well-established copyright principles. As Judge Clark observed, "the protection accorded literary property would be of little value if ... insulation from payment of damages could be secured by a publisher by merely refraining from making inquiry." *DeAcosta v. Brown*, 146 F.2d 408, 412 (2d

Cir. 1944), *cert. denied*, 325 U.S. 862, 65 S.Ct. 1197, 89 L.Ed. 1983 (1945) *quoted in Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304, 308 (2d Cir. 1963).

Cases from other bodies of law also support the view that good faith includes a duty to inquire. For example, casual reliance on uncorroborated reports of buyers or sales representatives may not be sufficient to make the requisite showing of good faith under § 2(b) of the Robinson-Patman Act, *United States v. United States Gypsum, supra*, 438 U.S. at 453, 98 S.Ct. at 2881, and in some instances to perfect a good faith defense a seller must do everything reasonably feasible to verify a customer's statement short of violating another statute. 438 U.S. at 454, 98 S.Ct. at 2882, n.29. In the commercial law context, willful ignorance or failure to inquire may negate good faith, *see Travis Investment Co. v. Harwyn Publishing Corp.*, 288 F.Supp. 519, 526 (S.D. N.Y.1968), and in some instances failure to inquire may constitute bad faith. *Otten v. Marasco*, 353 F.2d 563, 565 (2d Cir. 1965).

*Conclusion*

Rule 56(c), Fed.R.Civ.P. provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."

 Although courts are highly reluctant to grant motions for summary judgment in copyright cases, *see, e. g., Arnstein v. Porter*, 154 F.2d 464 (2d Cir. 1946), this is an exceptional case in which summary judgment is appropriate. While the parties to this lawsuit give different versions of the facts,[5] summary judgment is not precluded unless the differences are material to the outcome of the litigation, and here they are not. *See Kiess v. Eason*, 442 F.2d 712, 713

---

**4.** It is not necessary to decide whether Beckwith had a duty to contact Quinto as well.

**5.** For example, plaintiff seriously disputes whether defendant ever obtained general oral permission to reprint articles from the *Harvard Law Record.*

(7th Cir. 1971) (Stevens, J.). The key issue is whether defendant Beckwith acted in good faith. The court has before it extensive pleadings, documents, answers to interrogatories, and affidavits. Beckwith's affidavit sets out his version of the contacts he had with the *Harvard Law Record* prior to reprinting Quinto's article. There is nothing Beckwith could show at a trial, consistent with his affidavit, which would lead to a finding that he was misled and acted in good faith. He admits that he did not speak to anyone from the *Harvard Law Record* after Quinto's article appeared in that newspaper. As a result, Beckwith could not have obtained specific permission to reprint Quinto's article or inquired as to who owned the copyright in the article.

The court has viewed the evidence and the inferences which may be drawn from it in the light most favorable to the defendant and concluded that plaintiff is entitled to prevail as a matter of law. *See Gard v. United States*, 594 F.2d 1230, 1232 (9th Cir.) *cert. denied*, 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979). Although the issue of good faith is normally one to be decided as a factual issue, it is a question of law where only one inference is possible from the evidence. *Community Bank v. Ell*, 278 Or. 417, 564 P.2d 685, 691 (1977) (commercial law). *See also Coast Trading Co. v. Cudahy Co.*, 592 F.2d 1074, 1080 (9th Cir. 1979) ("We find that as a matter of law, the plaintiff did not satisfy the elements of good faith and commercial reasonableness...") (commercial law); *Zweig v. Hearst Corp., supra* (affirming grant of summary judgment on issue of good faith) (securities law). Here good faith is not a question of motive or belief, for the court assumes that Beckwith honestly believed he had permission to reprint Quinto's article. Rather, the issue is reasonableness and the duty of inquiry, which can be a question of law.

Pursuant to 17 U.S.C. § 504, plaintiff is entitled to an award of statutory damages. In addition, plaintiff is entitled to attorney's fees under 17 U.S.C. § 505. The amounts of these awards will be determined after further consideration by the court.

An appropriate Order accompanies this Memorandum.