Argued and submitted September 6, 2006, reversed and remanded April 4, 2007

Rechelle MOTSINGER,
*Plaintiff-Respondent,*

*v.*

LITHIA ROSE-FT, INC.,
dba Lithia Ford Lincoln Mercury of Roseburg,
*Defendant-Appellant.*

Douglas County Circuit Court
04CV2574CC; A128192

156 P3d 156

William G. Wheatley and Jaqua & Wheatley, LLC, filed the briefs for appellant.

Shane Swilley argued the cause for respondent. On the brief were Martin C. Dolan and Dolan Griggs LLP.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge,* and Wollheim, Judge.**

EDMONDS, P. J.

---

* Brewer, C. J., *vice* Ceniceros, S. J.

** Wollheim, J., *vice* Linder, J.

**EDMONDS, P. J.**

This case involves an interlocutory appeal from the trial court's denial of defendant's petition to abate the proceeding below pending arbitration. The trial court ruled that the arbitration clause contained in plaintiff's employment contract with defendant is unenforceable because it constitutes an unconscionable contract of adhesion. On appeal, defendant argues that the trial court erred in ruling that the arbitration clause was unconscionable. We agree and therefore reverse and remand.

The relevant facts are brief and undisputed. Plaintiff was employed by defendant as a part-time receptionist. She alleges that, during the 14 months that plaintiff worked for defendant, she was subjected to repeated acts of sexual harassment by several male employees. Eventually, plaintiff was terminated and she alleges that her termination was due, in part, to retaliation for reporting the alleged sexual harassment to management. Consequently, plaintiff brought a wrongful termination action against defendant, alleging claims of sexual harassment under ORS 659A.030(1)(a), retaliation under ORS 659A.030(1)(f), wrongful discharge, battery, and intentional infliction of emotional distress.

Prior to trial, defendant petitioned the court to abate the proceedings pending arbitration based on the fact that plaintiff, at the time of hiring, signed an employment contract that included an arbitration clause requiring any claims against defendant to be submitted to arbitration. The trial court denied defendant's petition because it determined that the "arbitration agreement was unenforceable due to unconscionability."[1]

On appeal, defendant advances two assignments of error. Defendant's first assignment of error presents the issue of whether the court or the arbitrator should decide whether the employment contract is a contract of adhesion.

---

[1] The document at issue is a single page and is titled "Comprehensive Agreement Employment At-Will and Arbitration." The portion of that document that deals with arbitration takes up more than half of the page. For ease of understanding, we refer to the arbitration provision in the employment contract as the "arbitration clause" throughout this opinion rather than the "arbitration agreement."

Defendant did not raise that issue to the trial court, and we decline defendant's invitation to treat it as error apparent on the face of the record.[2] The issue is not clearly defined by the parties, and, given the nature of the trial court's ruling, it is not apparent to us that the court erred. Under the circumstances, further discussion of that assignment would not benefit the bench, the bar, or the public.

■     In its second assignment of error, defendant contends that the trial court erred in concluding that the arbitration clause is unenforceable due to unconscionability.[3] The arbitration clause at issue is governed by the Federal Arbitration Act (FAA), 9 USC sections 1 to 16, and the Oregon Arbitration Act (OAA), *former* ORS 36.300 to 36.365 (2001).[4] Section 2 of the FAA provides that the enforceability of an arbitration clause may be challenged in state court "upon such grounds as exist at [state] law or in equity for the revocation of any contract," including unconscionability. Accordingly, even though the arbitration clause is governed by the

[2] Under ORAP 5.45(1), an issue must be preserved in the trial court before we will review it on appeal, unless we exercise our discretion to review it as error apparent on the face of the record.

[3] Defendant's second assignment of error states that the trial court erred in ruling that the "Comprehensive Agreement Employment At-Will and Arbitration" was unconscionable. Although it is not entirely clear from the court's ruling whether it determined that the entire employment contract, or only the arbitration clause contained therein, was unconscionable, we presume that the court's ruling was directed solely at the arbitration clause. *See Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or App 553, 563, 152 P3d 940 (2007) ("[I]f the claim is directed solely at the arbitration agreement, then the court can decide the validity of the arbitration clause, but if the claim is directed at 'the contract as a whole (including its arbitration provision),' then the arbitrator decides the validity of the arbitration clause."); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 US 440, _____ , 126 S Ct 1204, 1209, 163 L Ed 2d 1038 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."). Thus, the issue presented in defendant's second assignment of error, when properly framed, is whether the trial court erred in ruling that the *arbitration clause* in the employment contract was unenforceable due to unconscionability. Because the parties' arguments are directed at the unconscionability of the arbitration clause, defendant's characterization of the trial court's error does not affect our review.

[4] In 2002, when the parties entered into their contract, the Oregon Arbitration Act (OAA), *former* ORS 36.300 to 36.365 (2001), was in effect. The OAA was repealed in 2003, and was replaced by a version of the Uniform Arbitration Act (UAA). Or Laws 2003, ch 598, §§ 1-30, 57. The OAA continues to apply to this case because plaintiff's cause of action accrued before January 1, 2004. Or Laws 2003, ch 598, §§ 1-30.

FAA, we must look to state law to determine whether it is unconscionable. *See Vasquez-Lopez v. Beneficial Oregon, Inc.,* 210 Or App 553, 560, 152 P3d 940 (2007); *Dex Media, Inc. v. National Management Services,* 210 Or App 376, 150 P3d 1093 (2007).

■  Whether, under Oregon law, the facts of this case support a finding of unconscionability is a question of law that must be determined based on the facts in existence at the time the contract was made. *Best v. U. S. National Bank,* 303 Or 557, 560, 739 P2d 554 (1987). The party asserting unconscionability bears the burden of demonstrating that the arbitration clause in question is, in fact, unconscionable. *W. L. May Co., Inc. v. Philco-Ford Corp.,* 273 Or 701, 707, 543 P2d 283 (1975).

■ ■  In Oregon, the test for unconscionability has two components—procedural and substantive. *Vasquez-Lopez,* 210 Or App at 566. Procedural unconscionability refers to the *conditions* of contract formation, and substantive unconscionability refers to the *terms* of the contract. *Id.* at 566-67. An analysis of procedural unconscionability focuses on two factors: oppression and surprise. Oppression arises when there is inequality in bargaining power between the parties to a contract, resulting in no real opportunity to negotiate the terms of the contract and the absence of meaningful choice. *Id.* Surprise involves the extent to which the supposedly agreed terms were hidden from the party seeking to avoid enforcement of the agreement. *Id.* at 567.

■  Plaintiff contends that the arbitration clause is procedurally unconscionable because there was unequal bargaining power between the parties. Namely, plaintiff argues that (1) at the time of her hire she was only 19 years of age; (2) the arbitration clause was contained in a packet of approximately 70 new hire forms, 50 of which she had to read and sign; (3) she had less than two hours to review all the documents; and (4) she would not have been hired if she had refused to sign any of the documents.

Plaintiff argues that those conditions created unequal bargaining power, because the arbitration clause was imposed on her as a condition of employment and she had no meaningful opportunity to negotiate its terms. The

trial court agreed that plaintiff had no opportunity to negotiate the terms of the arbitration clause, and the evidence in the record supports the trial court's finding. Plaintiff was given a standardized printed form as part of the hiring process, and plaintiff had to accept the arbitration clause on a "take-it-or-leave-it" basis if she wanted the job.[5] *See Reeves v. Chem Industrial Co.*, 262 Or 95, 101, 495 P2d 729 (1972) (defining an adhesion contract as a "take-it-or-leave-it" contract that is the product of unequal bargaining power between the parties).

■        Apart from a showing of unequal bargaining power, plaintiff has not demonstrated that the circumstances of contract formation carried other indicia of procedural unconscionability. First, plaintiff has not demonstrated that the arbitration clause was the product of deception or compulsion. *See Carey v. Lincoln Loan Co.*, 203 Or App 399, 422, 125 P3d 814 (2005), *rev allowed*, 341 Or 449 (2006) (unconscionability may involve deception, compulsion, or genuine lack of consent). As defendant points out, it did not use high pressure tactics to compel plaintiff to consent to arbitration. To the contrary, defendant asserts that it gave plaintiff time to read through all of the forms and to ask questions, and the record supports that assertion. At the hearing on defendant's petition to abate, defendant's regional personnel coordinator testified:

> "A.    When [employees] are hired, they come into the local personnel office. We go over our—what we call a registration packet. It's a book of forms. We go over each form with them and explain it in detail.
>
> "They then watch a video pertaining to those documents and—just sort of giving them a general idea how to complete the forms.
>
> "They sign all the documents in that registration packet. * * * And then we give them an employee handbook and give them back their copy, any informational papers that they would receive back. And then they go to work.

---

[5] Defendant's regional personnel coordinator testified that, if a prospective hire does not sign the agreement, that person will not be hired.

"Q. How long does that process take, this signing documents process?

"A. On average I would say about two hours. Sometimes it's shorter; sometimes it's longer, just depending on how long it takes each individual person to read through the documents and sign them. But on average, it's about two hours.

"Q. Are employees given the opportunity to completely read through the documents before they sign them?

"A. Yeah. We not only encourage them to do so when we are going over the papers, but then also on our videotape it states don't—you know, make sure you understand. We tell them, if you don't understand any document, come back to us and ask us questions."

That testimony is the only evidence in the record regarding the conditions under which plaintiff agreed to enter into binding arbitration with defendant. It does not show that plaintiff was in any way confused by the forms or misled into signing them. Nor is there any evidence in the record that plaintiff was surprised by the terms of the arbitration clause. The fact that the employment contract contained an arbitration clause was not hidden or disguised from plaintiff. The clause appeared in a one-page document that was labeled with the heading "COMPREHENSIVE AGREEMENT EMPLOYMENT AT-WILL AND ARBITRATION." (Uppercase in original.) The arbitration clause itself encompassed the majority of that one-page document and was, except for its last sentence, written in the same size and style of font as the other provisions of the document. The last sentence of the clause was typed in a font larger than the rest of the clause and provided: **"I UNDERSTAND THAT BY VOLUNTARILY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY."**[6] (Boldface and uppercase in original.) Further, plaintiff signed the bottom of the document indicating that she had read and understood its terms. A party is "presumed to be familiar with the

---

[6] The parties do not argue about the potential implication of giving up their right to a jury trial in the context of whether their contract is unconscionable.

contents of any document that bears the person's signature." *First Interstate Bank v. Wilkerson*, 128 Or App 328, 337 n 11, 876 P2d 326 (1994) (citing *Broad v. Kelly's Olympian Co.*, 156 Or 216, 229, 66 P2d 485 (1937)).

Thus, the only indicia of procedural unconscionability here is unequal bargaining power. That, however, is not enough to invalidate an arbitration clause on the basis of unconscionability. *See Best*, 303 Or at 561 (account fees charged by bank not unconscionable where, "apart from the adhesive nature of the account agreement, the record reflect[ed] few indicia of one-sided bargaining[,]" the record contained no evidence that the depositors were not of ordinary experience and intelligence, and the agreement was not obtained through deception or other improper means); *Vasquez-Lopez*, 210 Or App at 569 ("Under Oregon law, * * * procedural unconscionability is relevant, but the emphasis is clearly on substantive unconscionability * * *."); *see also Gilmer v. Interstate / Johnson Lane Corp.*, 500 US 20, 33, 111 S Ct 1647, 114 L Ed 2d 26 (1991) ("Mere inequality in bargaining power * * * is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context."). Accordingly, we must consider whether the arbitration clause is rendered unconscionable when the disparity in bargaining power is "combined with the terms that are unreasonably favorable to the party with the greater power * * *." *Carey*, 203 Or App at 422. Whether the arbitration clause is *substantively* unconscionable is an inquiry that focuses on the one-sided nature of the substantive terms. *Vasquez-Lopez*, 210 Or App at 567.

Plaintiff contends that the arbitration clause is substantively unconscionable for two reasons: (1) the clause does not guarantee that plaintiff will not have to pay any of the fees or costs associated with arbitration, and (2) it lacks mutuality because it requires plaintiff to submit all of her claims to arbitration while defendant is not mutually obligated to arbitrate any claims that it may have against plaintiff.

We turn first to plaintiff's arguments regarding the costs of arbitration. The arbitration clause is silent as to

which party bears those costs. We observe that the clause, by its own terms, is governed by *former* ORS 36.345, which provided that, unless otherwise agreed upon, "the costs of witness fees and other fees in the case shall be taxed against the losing party * * *."

■ In *Green Tree Financial Corp.-Ala. v. Randolph*, 531 US 79, 91, 121 S Ct 513, 148 L Ed 2d 373 (2000), the Supreme Court considered an arbitration clause that was silent as to arbitration costs and held that silence as to which party will bear the costs of arbitration is insufficient to render an arbitration clause unenforceable. The court concluded that, because the plaintiff did not produce any evidence that she would be subject to the costs of arbitration, or what those costs might be, it would not invalidate the arbitration agreement. Specifically, the Court reasoned:

> "It may well be that the existence of large arbitration costs could preclude a litigant * * * from effectively vindicating her * * * rights in the arbitral forum. But the record does not show that [plaintiff] will bear such costs if she goes to arbitration. Indeed, it contains hardly any information on the matter. * * * The record reveals only the arbitration agreement's silence on the subject, and that fact alone is plainly insufficient to render it unenforceable. The 'risk' that [plaintiff] will be saddled with prohibitive costs is too speculative to justify invalidation of an arbitration agreement."

*Id*. at 90-91 (footnote omitted). Here, as in *Green Tree*, plaintiff has offered no evidence of the likely costs of arbitration or the potential impact of those costs on her. Thus, we are required to speculate as to (1) whether plaintiff will bear any costs at all in the arbitration, (2) if so, what those costs would be, and (3) what deterrent effect, if any, those potential costs would have on plaintiff's ability to bring an action to vindicate her rights. We will not invalidate the arbitration clause simply because of the possibility that plaintiff, if she were to lose, would bear some undetermined costs of arbitration. *Cf. Musnick v. King Motor Co. of Ft. Lauderdale*, 325 F3d 1255, 1260 (11th Cir 2003) (claim that cost of arbitration under "loser pays" fees provision would be prohibitive is too speculative to invalidate an otherwise enforceable

agreement). For all of the above reasons, we reject plaintiff's argument that the potential costs of arbitration render the arbitration clause unconscionable on this record.[7]

■ Lastly, we turn to plaintiff's argument that the arbitration clause is unconscionable because it requires her to submit all of her potential claims against defendant to arbitration while not similarly requiring defendant to submit its claims against plaintiff to arbitration. Whether such an arbitration clause is unconscionable in a contract of adhesion appears to be a matter of first impression in Oregon.

Courts in other jurisdictions have taken varied approaches to challenges to "nonmutual" arbitration clauses between parties of unequal bargaining power. A number of courts—if not a majority—have rejected challenges of unconscionability, based on the theory that agreements to arbitrate do not require "mutuality of obligation" but only adequate consideration; that is, as long as the agreement is supported by adequate consideration, the arbitration clause need not apply equally to both parties. The Third Circuit's decision in *Harris v. Green Tree Financial Corp.*, 183 F3d 173, 183 (3d Cir 1999), is illustrative. In *Harris*, the plaintiff homeowners argued that an arbitration clause in a mortgage contract lacked adequate consideration and was unconscionable because it allowed the lender to litigate disputes in court but required the homeowners to arbitrate. The court first addressed the "doctrine of mutuality." The court explained that "[m]odern contract law largely has dispensed with the requirement of reciprocal promises * * * provided that a contract is supported by sufficient consideration." *Id.* at 180. For that reason, the court concluded that "mutuality is not a requirement of a valid arbitration clause," a conclusion that the court noted "is consistent with that of most other federal courts that have considered this issue." *Id.* The court then

---

[7] Recently, in *Vasquez-Lopez*, we distinguished *Green Tree* and concluded that a fee-sharing provision was "sufficiently onerous to act as a deterrent to plaintiffs' vindication of their claim." 210 Or App at 575. In *Vasquez-Lopez*, the arbitration agreement specified the allocation of fees and the plaintiffs had offered evidence that, by the end of the second hour of the second day of arbitration, they would owe six months' savings. *Id.* at 572. Here, plaintiff has not made a similar showing.

turned to the issue of unconscionability and summarily concluded:

> "This argument overlaps substantially with the issue of mutuality, addressed above. As stated above, the mere fact that [the lender] retains the option to litigate some issue in court, while the [homeowners] must arbitrate all claims does not make the arbitration agreement unenforceable. We have repeatedly held that inequality in bargaining power, alone, is not a valid basis upon which to invalidate an arbitration agreement."

*Id.* at 183. Other courts have similarly relied solely on a "mutuality of obligation" analysis to reject unconscionability challenges to arbitration clauses. *See, e.g., State ex rel Vincent v. Schneider,* 194 SW 3d 853, 859 (Mo 2006) (conflating unconscionability analysis and unenforceability due to lack of "mutuality of obligation"); *Blue Cross Blue Shield of Alabama v. Rigas,* 923 So2d 1077, 1091 (Ala 2005) (same); *Rains v. Foundation Health Systems,* 23 P3d 1249, 1255 (Colo App 2001) (rejecting unconscionability challenge to arbitration clause on the ground that Colorado law requires sufficient consideration, not mutuality of remedies); *see also In re FirstMerit Bank, N.A.,* 52 SW3d 749, 757 (Tex 2001) ("Most federal courts * * * have rejected similar challenges [based on unconscionability] on the grounds that an arbitration clause does not require mutuality of obligation, so long as the underlying contract is supported by adequate consideration.").[8]

In our view, however, it is possible for a contractual term to be supported by adequate consideration and yet still be so unreasonable as to be unconscionable in the context of a

---

[8] We had an opportunity to apply Colorado law on this issue in *Dex Media,* a case that, unlike this one, involved an arbitration agreement between parties of relatively equal bargaining power. We reasoned that, under Colorado law, "not every contractual obligation need be mutual as long as each party has provided some consideration for the contract." 210 Or App at 388. We accepted the plaintiff's rationale for its business need for different remedies under the agreement and concluded that, even though "other provisions in the Agreement afford commercially reasonable remedies to [plaintiff], but not to [defendant], outside the arbitration process * * *," the arbitration provision was not unconscionable because "each party had provided consideration for the Agreement." *Id.* Because *Dex Media* applied Colorado law, and involved parties of equal bargaining power, our reasoning in that case is of little assistance here.

contract of adhesion.[9] Indeed, some courts have concluded that, despite the existence of adequate consideration, a non-mutual arbitration clause is *presumptively* unconscionable when the parties lack equal bargaining power. The leading case in that regard is *Armendariz v. Foundation Health Psychcare*, 24 Cal 4th 83, 6 P3d 669 (2000). In *Armendariz*, an employee challenged an arbitration clause in her employment contract, arguing, among other things, that the agreement was unconscionable because it applied unilaterally. The employer, in turn, argued that the agreement to arbitrate was supported by adequate consideration. The court agreed that the contract was not illusory, but explained that adequacy of consideration was not the basis of its decision: "We conclude, rather, that in the context of an arbitration agreement imposed by the employer on the employee, such a one-sided term is unconscionable." *Id.* at 118, 6 P3d at 692.

The *Armendariz* court reasoned that, to be enforceable, arbitration agreements must have a "modicum of bilaterality":

> "Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities.' "

*Id.* at 117, 6 P3d at 692. Thus, in the context of unequal bargaining power, the *Armendariz* court essentially shifted the burden to the party with superior bargaining power to prove a reasonable justification for the lack of mutuality in the arbitration clause.[10]

---

[9] *Cf. Batory v. Sears, Roebuck & Co.*, 2006 WL 3627124 at *2 (D Ariz, Dec 12, 2006) (distinguishing between defenses regarding mutual promises and defense of unconscionability in the context of arbitration agreements).

[10] The Supreme Court of Montana reached a similar conclusion in *Inwen v. U.S. West Direct*, 293 Mont 512, 977 P2d 989 (1999). *See also Torrance v. Aames Funding Corp.*, 242 F Supp 2d 862, 868 (D Or 2002) (applying *Armendariz* principles to arbitration clause under Oregon law).

Some courts have attempted to steer a middle course between the more categorical approaches in *Armendariz* and *Green Tree*, examining the *effect* of the lack of mutuality on the rights of the employee. For example, in *Zuver v. Airtouch Communications Inc.*, 153 Wash 2d 293, 103 P3d 753 (2004), the court examined an arbitration clause in which the employee, but not the employer, waived the right to recover punitive and exemplary damages. The employee argued, based on the reasoning in *Armendariz*, that the clause was "substantively unconscionable because it applies only to her, *i.e.*, the provision is unilateral." *Id.* at 315, 103 P3d at 766. The court agreed with the employee's argument that the effect of the remedies limitation "blatantly and excessively favors the employer in that it allows the employer alone access to a significant legal recourse." *Id.* at 318, 103 P3d at 767. In response to a dissenting opinion that employed a "mutuality of obligations" analysis, the court explained:

> "[W]e are not concerned here with whether the parties have mirror obligations under the agreement, but rather whether the effect of the provision is so 'one-sided' as to render it patently 'overly harsh' in this case."

*Id.* at 317 n 16, 103 P3d at 767 n 16. Thus, the court focused on whether, under the unilateral clause, the employee was left without significant legal recourse when compared to the recourse of the employer. *See also In re Palm Harbor Homes, Inc.*, 195 SW 3d 672, 678 (Tex 2006) (lack of mutuality must be considered in context of the remaining provisions of the arbitration agreement); *Steed v. Sanderson Farms, Inc.*, 2006 WL 2844546 at 8 (SD Miss, Sept 6, 2006) (lack of mutuality does not automatically render an arbitration clause unenforceable; clause must be examined in context).[11]

Our recent opinion in *Vasquez-Lopez*, which involved a challenge to an arbitration rider to a loan agreement, took a similar tack. In that case, the plaintiffs, borrowers on a home loan, argued, among other things, that the rider contained an unconscionable ban on class action lawsuits. We noted that, although the ban forbade the defendant

---

[11] At least one commentator has argued that employees may be *worse off* as a result of mutual arbitration provisions. Christopher R. Drahozal, *Nonmutual Agreements to Arbitrate*, 27 Iowa J Corp L 537, 555 (2002).

lender and its customers from bringing class actions, it was effectively unilateral. 210 Or App at 570. However, we went on to examine the *effect* of that unilateral application, observing that the ban would deny borrowers a valuable mechanism for prosecuting actions for small recoveries. Ultimately, we concluded, "In short, the class action ban is unilateral in effect and, *more significantly, it gives defendant a virtual license to commit, with impunity, millions of dollars' worth of small-scale fraud." Id.* at 572 (emphasis added).

We conclude that an approach that focuses on the one-sided *effect* of an arbitration clause—rather than on its one-sided *application*—to evaluate substantive unconscionability is most consistent with the common law in Oregon regarding unconscionability of other kinds of contractual provisions and with state and federal policies regarding arbitration. The purpose of the FAA was to reverse longstanding judicial hostility to arbitration and to place arbitration clauses on the same footing as other contracts. *Dean Witter Reynolds, Inc. v. Byrd,* 470 US 213, 219-20, 105 S Ct 1238, 84 L Ed 2d 158 (1985). For that reason, arbitration clauses cannot be singled out for special treatment under an unconscionability analysis and should be governed by the same principles as other contracts.

Generally, Oregon courts have been reluctant to declare contractual provisions *"per se"* unconscionable, even among parties of unequal bargaining power. For example, in *William C. Cornitus, Inc. v. Wheeler,* 276 Or 747, 755, 556 P2d 666 (1976), the defendant, a gas station, argued that its lease from an oil company was unconscionable because it did not allow the gas station to renew the lease on reasonable terms. The gas station pointed to an emerging public policy that every such lease and dealer agreement contain an implied term requiring the lessor to offer a renewal on reasonable terms in the absence of good cause for terminating the lease. The court, however, refused to declare the lease term *"per se* unconscionable":

"Similar problems face many other small businesses which are dependent on their location for most of their goodwill without respect to whether they lease from large corporations or whether the leases are coupled with franchise

arrangements. *We do not believe that the failure of a lessor to include a renewal provision in a lease is per se unconscionable and, without legislative guidance, we have no basis for declaring that public policy requires such a provision in some leases and not in others.*[12]

276 Or at 754-55.

More recently, in *Carey*, 203 Or App at 422, we noted the reluctance of Oregon courts to declare provisions substantively unconscionable: "Oregon cases generally focus on the procedural issues * * * or involve provisions that the courts conclude are *not* unconscionable." (Emphasis added.) Thus, a blanket rule that unilateral provisions to arbitrate are *per se* unconscionable would be inconsistent with the case-by-case analysis that Oregon courts have employed to determine unconscionability with respect to other types of contracts. *See Vasquez-Lopez*, 210 Or App at 567 ("[E]ach [unconscionability] case is decided on its own unique facts.").

■ Moreover, Congress and the Oregon legislature have provided guidance as to some of the policy considerations at play in the context of arbitration agreements. *See Restatement (Second) of Contracts* § 208 comment a (1981) (explaining that unconscionability "overlaps with rules which render particular bargains or terms unenforceable on grounds of public policy") (*quoted in Carey*, 203 Or App at 422). Oregon law and the FAA favor arbitration as a means for resolving disputes. *Southland Corp. v. Keating*, 465 US 1, 15-16, 104 S Ct 852, 79 L Ed 2d 1 (1984) (stating that the FAA evidences Congressional intent to strongly favor arbitration agreements); *Seller v. Salem Women's Clinic, Inc.*, 154 Or App 522, 526, 963 P2d 56, *rev den*, 328 Or 40 (1998) (stating that Oregon courts construe arbitration agreements liberally in favor of arbitrability). In light of the federal policy favoring arbitration, the United States Supreme Court has rejected the argument that an arbitral forum is, by itself, inadequate

---

[12] In *W. L. May Co.*, the court was "not persuaded that it is unreasonable per se for a manufacturer to reserve the right to refuse to repurchase at least portions of a distributor's inventory upon termination." 273 Or at 708. Although *W. L. May Co.* involved a contract between merchants that was governed by the Uniform Commercial Code, it demonstrates the reluctance of Oregon courts to declare contractual provisions unconscionable without regard to their practical effect on the parties.

to allow a prospective litigant to vindicate his or her statutory causes of action. *Gilmer*, 500 US at 27-28. Given the public policy favoring arbitration as a forum for dispute resolution, and Supreme Court case law recognizing the adequacy of that forum, we are reluctant to conclude that a unilateral agreement to arbitrate is *inherently* unconscionable in all cases.

Rather, consistently with our approach regarding other contracts, we must determine on a case-by-case basis whether, given the unequal bargaining power, the effect of the arbitration clause makes the parties' respective obligations so unbalanced as to be unconscionable. *See Best*, 310 Or at 561 (fee arrangement for processing nonsufficient fund (NSF) checks held not unconscionable where, despite adhesive nature of the agreement, fees were "relatively small and were similar to NSF fees charged by other banks"); *Vasquez-Lopez*, 210 Or App at 575-77 (examining effect of procedurally unconscionable arbitration rider and concluding that the rider "conferred important benefits to [the lender] and imposed significant detriments" to the borrowers); *Carey*, 203 Or App at 427 (focusing on whether the "effect" of a prohibition on the assignment of the contract was unconscionable and concluding that, because the law imposed a reasonableness condition that would limit the operation of the prohibition, the provision was not unconscionable); *see also W. L. May Co.*, 273 Or at 709 (concluding that a repurchase provision in a contract between merchants was not unconscionable where, "*in effect* any exercise of the repurchase election by [one merchant] would have been restricted by its obligation of good faith" (emphasis added)). In this case, that inquiry turns on whether plaintiff's opportunity to vindicate her rights in an arbitral forum, when compared to the remedies available to defendant, is substantively unconscionable.

We turn, then, to the terms of the arbitration clause. The clause provides that arbitration is to be governed by the FAA and former "Oregon Revised Statutes 36.300 et seq." The arbitrator is to be "a retired Oregon Circuit Court Judge whom the parties shall mutually agree to select."[13] The rules

---

[13] The arbitrator also shall be "subject to disqualification on the same grounds as would apply to a judge of such [circuit] court" and has the immunity of a judicial officer.

of pleading and evidence are to be governed by the standards in federal district court, and "[r]esolution of the dispute shall be based solely upon the law governing the claims and defenses pleaded, and the arbitrator may not invoke any basis (including, but not limited to, notions of 'just cause') other than such controlling law." The clause further requires the arbitrator to provide a "written reasoned opinion." If either party is dissatisfied with the opinion, the award shall be reviewed by a second arbitrator who shall, "as far as practicable, proceed according to the law and procedures applicable to appellate review by the Oregon Court of Appeal[s] of a civil judgment following court trial."

Equally relevant, however, is what the arbitration clause does *not* do. Most importantly, the arbitration clause does not impose any limits on the type or amount of recovery that can be awarded by the arbitrator. It does not exclude punitive or statutory damages or preclude an award of attorney fees when otherwise provided by law.[14] The arbitration clause does not impose any limits on discovery or admissible evidence, apart from those limitations that apply in federal district court,[15] nor does it impose tight deadlines on the filing of claims. In effect, plaintiff is entitled to all of the same remedies—and most of the same procedural protections—as defendant; she simply must bring her claims in a different forum.

Thus, we cannot say that the *effect* of the arbitration clause is so one-sided or unreasonable as to render it unconscionable here. Certainly, plaintiff does not have contractual rights that are equivalent to those of defendant. But the doctrine of unconscionability does not relieve parties from all unfavorable terms that result from the parties' respective bargaining positions; it relieves them from terms that are *unreasonably* favorable to the party with greater bargaining

---

[14] In this respect, the arbitration clause at issue here differs materially from the clause held unconscionable in *Armendariz*. In addition to applying unilaterally, the agreement in *Armendariz* included significant damages limitations, including an exclusion of "damages for prospective future earnings, so-called 'front pay', a common and often substantial component of contractual damages in a wrongful termination case." 24 Cal 4th at 121, 6 P3d at 694.

[15] Moreover, the clause includes a provision that, if marked by plaintiff, would have excluded arbitration of Title VII claims. Plaintiff did not mark that provision.

power. *See* UCC § 2-302, Official Commentary ("The principle is one of the prevention of oppression and unfair surprise * * * and *not of disturbance of allocation of risks because of superior bargaining power*.") (emphasis added); *see also Meyer v. Kesterson*, 151 Or App 378, 394, 950 P2d 896 (1997), *rev den*, 327 Or 123 (1998) ("It is not enough, as we have said, that defendant made what, in retrospect, turned out to be a bad bargain.").[16] Oregon courts have been reluctant to disturb agreements between parties on the basis of unconscionability, even when those parties do not come to the bargaining table with equal power. *See Best*, 303 Or at 561; *Cornitius*, 276 Or at 755; *Zemp v. Rowland*, 31 Or App 1105, 1110, 572 P2d 637 (1977), *rev den*, 282 Or 537 (1978) (concluding that early termination fee of $185 in a residential lease was not "shocking to the conscience"). In those rare instances in which our courts have declared contractual provisions unconscionable, there existed "serious procedural and substantive unfairness." *Vasquez-Lopez*, 210 Or App at 576; *Carey*, 203 Or App at 428 (declaring unconscionable a prepayment limitation that was "entirely disproportionate to its purpose" and "entirely fail[ed] to recognize [the homeowners'] interest in selling the house and recovering the equity that they had accrued * * *"). In light of that case law, and in the absence of some evidence that the arbitration clause was the product of deception, surprise, or other duress, we conclude that the arbitration clause in this case is not so substantively unconscionable as to render the clause unenforceable.

For all of the above reasons, we hold that the arbitration clause in this case is not unconscionable and is enforceable against plaintiff. Thus, the trial court erred in denying defendant's petition to abate the proceedings pending arbitration.

Reversed and remanded.

---

[16] We have recognized that the UCC provisions regarding unconscionability, although applying only in sales cases, influenced the subsequent *Restatement (Second) of Contracts* and are influential in nonsales cases. *Carey*, 203 Or App at 421 (citing *Best v. U. S. National Bank*, 78 Or App 1, 10, 714 P2d 1049 (1986), *aff'd on other grounds*, 303 Or 557, 739 P2d 554 (1987)).