FILED
COURT OF APPEALS
DIVISION II

2013 JUN 14 AM 8: 59

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| GAIL DAVERN, an unmarried person, | No. 42657-9-II |
| Respondent, | |
| v. | |
| TIM LIDDIARD and KRISTIN A. SHAUCK, husband and wife, SOUTH BEND MILLS AND TIMBER COMPANY, and BRIX BROTHERS LOGGING COMPANY, and all other persons or parties unknown claiming any right, title, estate, lien, or interest in the real estate described in the complaint here, | UNPUBLISHED OPINION |
| Appellants. | |

JOHANSON, A.C.J. — While Gail Davern and Tim Liddiard were in a committed intimate relationship (CIR), they purchased real property in Pacific County. Before closing on the property, they signed a joint venture agreement (JVA) that provided for disposition of the property upon their deaths or termination of their relationship. When their relationship ended, Liddiard and his new wife, Kristin Shauck, refused to quit claim the property to Davern as the JVA required. Davern sued to quiet title in the property, and the trial court enforced the JVA, granting summary judgment to Davern. We affirm because the JVA was not procedurally or substantively unconscionable, and the trial court did not abuse its discretion in denying Liddiard

and Shauck's motion to amend his answer after summary judgment or in awarding Davern attorney fees. We decline Davern's request to impose CR 11 sanctions or grant her appellate attorney fees.

## FACTS

In 1983, Davern and her husband purchased a Utah home. Her husband died, and in 1992, Davern began a relationship with Liddiard. In 1993, Liddiard moved into Davern's Utah home.

During their relationship, the two never married, Davern kept her own name, and they did not hold themselves out as married. In 1998, Davern and Liddiard discussed moving, and Liddiard contributed repair work and maintenance on the Utah property to prepare it for sale. Davern sold her Utah home in 1999 and, using the proceeds from the sale and money her mother gifted to her, she purchased unimproved property near Naselle in Pacific County.

The couple planned to buy the unimproved Naselle property with Davern's money; then Liddiard would build a home on it. In June 1999, they signed a purchase and sale agreement for the property. And on November 9, 1999, the seller prepared and signed a statutory warranty deed listing both Davern and Liddiard as owners.

Davern was concerned about risking her life savings under the couple's proposed arrangement; she wanted to protect herself and her children should Davern and Liddiard's relationship end. Davern asked Liddiard to enter into the JVA with her.

Davern had an attorney prepare the JVA. It provided that Davern would purchase the property "with her sole funds" and that Liddiard would contribute "his labor and expertise to the building and development of the parties' residence on the property." Clerk's Papers (CP) at 10.

The joint venture would continue "until terminated, liquidated, or dissolved by law or as hereinafter provided." CP at 9. Termination would occur following "[t]he breakup of the personal relationship of the parties." CP at 11.

The JVA provided that if either Davern or Liddiard predeceased the other, her or his heirs would inherit their share of the property, 75 percent for Davern's heirs and 25 percent for Liddiard's, regardless of whether Liddiard ever developed the property. If the parties separated after Liddiard developed the property, Davern would reimburse him for his expenses and labor. But under the JVA, if the parties separated before Liddiard improved the property, he would simply quit claim the property to Davern. The JVA included a choice of law provision that the JVA "shall be construed and enforced under the laws of the State of Oregon." CP at 12.

On November 30, 1999, Davern and Liddiard drove to Astoria, Oregon to review the JVA, and both Davern and Liddiard signed it. The following day, Davern and Liddiard recorded the statutory warranty deed.

In October 2003, Davern and Liddiard ended their personal relationship before any substantial improvements had been made to the property. Davern continued to pay the taxes on the property. Liddiard eventually married Shauck.

In 2010, Davern contacted Liddiard about his obligation to quit claim the property to her. Davern's attorney requested that Liddiard and Shauck honor the JVA and convey the property to Davern. They refused, claiming that Liddiard was entitled to an equitable property distribution.

3

Davern then filed a claim to quiet title and for declaratory judgment.[1] Liddiard and Shauck answered,[2] admitting that Davern had purchased the Naselle property with her money and that he did not build a house on it. He claimed, however, that his repair work on Davern's Utah home added to its sale value. So he asserted an equitable interest in the revenues from the sale of Davern's Utah home, revenues used to purchase the Naselle property. He also claimed that the JVA was invalid and that he was entitled to a just and equitable division of the property.

Davern moved for summary judgment against Liddiard and Shauck, arguing that the JVA controlled and that Liddiard and Shauck had admitted all the material facts supporting its enforcement. The trial court granted Davern's summary judgment motion on July 29, 2011.

On August 19, 2011, Liddiard and Shauck filed a combined motion for reconsideration, clarification, and relief from judgment. They claimed that the trial court should have reviewed the issues under Washington, rather than Oregon, law, and they asked the court to "clarify that it has not yet ruled on Defendant's affirmative assertion of the existence of a meretricious relationship." CP at 108. Then, on August 25, Liddiard and Shauck filed a motion to amend their answer to include a new defense—that the statute of limitations on an action under a JVA, a written contract, had expired. Davern opposed these motions as untimely.

On September 7, 2011, the trial court entered the final decree quieting title and judgment as well as findings and conclusions while Liddiard and Shauck's motions were still pending. It later denied all of their post-order motions and entered findings and conclusions relating to those.

---

[1] Because parts of the property were owned decades earlier by now-defunct timber companies, she had to claim adverse possession against them and serve them by publication.

[2] At the trial court, one attorney represented both Liddiard and Shauck and submitted joint filings on their behalf.

The trial court also awarded Davern attorney fees and costs. It then added a supplemental award of attorney fees to cover the handling of Liddiard and Shauck's post-order motions. Liddiard and Shauck appeal the trial court's final orders and attorney fees awards.

ANALYSIS

I. ENFORCEMENT OF THE JVA

Liddiard and Shauck argue that the trial court erred in enforcing the JVA and granting summary judgment because genuine issues of material fact exist regarding the substantive and procedural fairness of the JVA. We disagree.

We review summary judgment orders de novo. *Mele v. Turner*, 106 Wn.2d 73, 81, 720 P.2d 787 (1986). Trial courts properly grant summary judgment where the pleadings and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Questions of fact may be determined on summary judgment as a matter of law only where reasonable minds could reach but one conclusion. *Alexander v. County of Walla Walla*, 84 Wn. App. 687, 692, 929 P.2d 1182 (1997).

A. JVA not Equivalent to Prenuptial Agreement

As a threshold matter, Liddiard and Shauck argue that we should extend the fairness standard used to evaluate the enforcement of prenuptial agreements to property contracts between parties in a CIR. They analogize the JVA to a prenuptial agreement. They cite Washington law, which evaluates prenuptial agreements for fairness, rather than standard contract law, which reviews contracts for unconscionability. Unlike the JVA here, however, a prenuptial agreement is a contract between individuals prior to and in consideration of marriage. Because Davern and Liddiard signed the JVA years after they began a CIR, and not in

5

anticipation of forming a CIR, we decline to apply a fairness standard here. The policy considerations that support application of a fairness standard to a prenuptial agreement are simply not implicated.

In a related argument, Liddiard and Shauck claim that the trial court erred in failing to consider that Liddiard and Davern were in a CIR when they signed the JVA. Davern does not dispute that she and Liddiard were in a CIR, but she responds that their CIR is immaterial to the legal issues, and she asserts that contract law, not marriage or CIR law, applies in evaluating the JVA's validity. Davern is correct.

Liddiard and Shauck claim that because Liddiard and Davern were in a CIR, Liddiard is entitled to a just and equitable distribution of the Naselle property. Liddiard and Shauck assume that the JVA is invalid. But in signing the JVA, Liddiard and Davern negated potential community property claims relating to the property. Because we hold below that the JVA is valid and enforceable, then any determination (or lack thereof) relating to the existence of a CIR is immaterial and did not preclude summary judgment.

## B. Validity of JVA

We now turn to whether the JVA is valid. Per the JVA's choice of law provision, we evaluate the contract's validity under Oregon law. Whether a case's facts support an unconscionability finding is a legal issue that must be determined based on the facts in existence when the parties formed the contract. *Best v. U.S. Nat'l Bank of Oregon*, 303 Or. 557, 560, 739 P.2d 554, 556 (1987). The party asserting unconscionability bears the burden of demonstrating that the contract or provision in question was unconscionable at formation. *W.L. May Co. v. Philco-Ford Corp.*, 273 Or. 701, 707, 543 P.2d 283, 286 (1975).

In Oregon, contract unconscionability has two components: procedural unconscionability, which refers to the conditions of contract formation; and substantive unconscionability, which refers to a contract's terms. *Motsinger v. Lithia Rose-FT, Inc.*, 211 Or. App. 610, 614, 156 P.3d 156, 160 (2007). Procedural unconscionability focuses on two factors: oppression, which arises with unequal bargaining power between the contract's parties, resulting in no real opportunity to negotiate contractual terms and the absence of meaningful choice; and surprise, which involves the extent to which the supposedly agreed terms were hidden from the party seeking to avoid the agreement's enforcement. *Motsinger*, 156 P.3d at 160. Substantive unconscionability focuses on whether the substantive terms unfairly favor the party with greater bargaining power. *Livingston v. Metro. Pediatrics, LLC*, 234 Or. App. 137, 151, 227 P.3d 796, 806 (2010). Whether a clause or contract is substantively unconscionable is an inquiry that focuses on the one-sided nature of the substantive terms. *Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or. App. 553, 567, 152 P.3d 940, 948 (2007).

### 1. Procedural Unconscionability

Regarding procedural unconscionability, Liddiard and Shauck do not offer examples of oppression or surprise. They claim that Davern rushed Liddiard to sign the JVA without having a meaningful opportunity to review it. Liddiard claimed that on November 30, 1999, he and Davern planned to close the purchase of the Naselle property; but before closing, Davern wanted him to sign the JVA at an Astoria attorney's office. Davern provided him a copy of the JVA, but Liddiard did not read it until he arrived at the attorney's office. Liddiard asserts that on the way to Astoria, Davern told him that they were in a hurry "to drive to South Bend WA afterwards to record the deed," so he had "just a few minutes to review the document." Br. of Appellant at 7.

Davern then told Liddiard to "hurry up and sign so they could drive to South Bend in time to record the deed."[3] Br. of Appellant at 7.

Unlike common cases involving allegations of oppression, Liddiard and Shauck do not claim that Davern refused to sign the closing documents or threatened to impose any negative consequences on him if he did not sign. Moreover, Liddiard and Davern purchased the Naselle property together in June 1999, and the seller included Liddiard on the statutory warranty deed earlier in November 1999. Because the property deed already named Liddiard, Davern lacked any leverage to force him to sign the JVA—he was already listed as a grantee. Therefore, Liddiard and Shauck do not carry their burden to demonstrate oppression as a component of procedural unconscionability.

Surprise is the second component of procedural unconscionability. Liddiard and Shauck argue that the JVA included a surprise provision stating that Davern purchased the Naselle property with her sole funds—after Liddiard read the provision and asked that it not be included in the final JVA. Liddiard read the JVA before he signed it. He spotted and underlined the questionable provision. Liddiard then signed the JVA with the provision still included and when he alerted Davern that he had signed a copy with the questioned provision included, she stated that they could change the JVA later.

Liddiard and Shauck's facts, presented here, do not give rise to a claim of procedural unconscionability by surprise because Davern did not hide from Liddiard the questionable provision. Liddiard admits that he read the provision and even underlined it before signing. He

---

[3]Davern and Liddiard, however, signed the JVA the day before they recorded the deed. Accordingly, the record does not support Liddiard's story that Davern rushed him to sign the JVA so that they could record the deed the same day.

knew where the provision was located within the four-page JVA, and he signed it without checking whether that copy contained the objectionable provision. Liddiard and Shauck cannot demonstrate unconscionability by surprise because Davern did not hide the JVA's objectionable provision. Liddiard and Shauck cannot demonstrate either oppression or surprise, so they cannot meet their burden to show procedural unconscionability.

2. Substantive Unconscionability

Regarding substantive unconscionability, Liddiard and Shauck argue that the JVA unconscionably "gave Davern almost exclusive control over whether Liddiard ever received any portion of his equity interest in the property." Br. of Appellant at 19. We disagree.

The JVA provided that Davern would purchase the Naselle property with her funds. Liddiard would contribute no money to the property's purchase, but he would contribute his "labor and expertise" to building a residence on the property; and he would receive a 25 percent property interest. CP at 10. If their relationship ended, though, the JVA provided that Davern would reimburse Liddiard for his labor and expenses in building a home and she would retain the property. And in the event that one of the parties predeceased the other while they were still in a relationship, Liddiard or his heirs would be entitled to a 25 percent property interest.

We evaluate these terms to determine whether they unfairly favored Davern[4] and whether the JVA's substantive terms were one-sided. First, we look at the parties' contributions to the joint venture: Davern would use her funds to purchase the property, and Liddiard would, at a later point, contribute to building a home on it. Second, the JVA created a 75 percent property

---

[4] Because Liddiard and Shauck argue that Davern had unfair bargaining power, we assume, without deciding, that Davern maintained greater bargaining power.

interest for Davern and a 25 percent interest for Liddiard. If either Davern or Liddiard predeceased the other—whether Liddiard improved the property or not—Liddiard would maintain a 25 percent interest; Davern, a 75 percent interest. Third, if Liddiard contributed any labor or expertise to building a home on the property, and the parties terminated their relationship before either of their deaths, Davern would reimburse Liddiard for his labor and expenses. Davern would then retain ownership over the property, and Liddiard would "execute, acknowledge and deliver any and all documents and instruments necessary to complete the transfer of property" back to Davern. CP at 11.

Because the JVA created an avenue by which Liddiard would obtain a 25 percent interest in the property without having to ever contribute to its development, the JVA was not substantively unconscionable. And had Liddiard invested time or money in developing the property, Davern would have reimbursed him. Because Liddiard and Shauck do not demonstrate that the JVA's substantive terms unfairly favored Davern, they cannot bear their burden to show substantive unconscionability.

Liddiard and Shauck fail to demonstrate the JVA's procedural or substantive unconscionability. Because they do not carry their burden, we affirm the trial court's enforcement of the JVA in granting summary judgment. *See W.L. May Co.*, 543 P.2d at 286.

## II. MOTION TO AMEND

Liddiard and Shauck next argue that the trial court erred in denying their motion to amend their answer to include a statute of limitations defense. We disagree.

The decision to amend pleadings is discretionary with the trial court, and we will not overturn the trial court's refusal to permit such an amendment except for a manifest abuse of

discretion. *Lincoln v. Transamerica Inv. Corp.*, 89 Wn.2d 571, 577, 573 P.2d 1316 (1978). When a party moves to amend after the adverse granting of summary judgment, it disrupts the normal course of proceedings, and the trial court should consider whether the party could have timely made its motion earlier in the litigation. *Ensley v. Mollmann*, 155 Wn. App. 744, 759, 230 P.3d 599, *review denied*, 170 Wn.2d 1002 (2010).

The statute of limitations in a contract action begins to run at the time of the breach. *City of Algona v. City of Pacific*, 35 Wn. App. 517, 521, 667 P.2d 1124, *review denied*, 100 Wn.2d 1028 (1983). The statute of limitations on a contract action is six years. *See* RCW 4.16.040.

Here, the trial court first granted summary judgment for Davern and against Liddiard and Shauck on July 29, 2011. On August 25, nearly a month later, Liddiard and Shauck raised the statute of limitations issue in a motion for leave to amend their answer. They admitted that they could have brought the motion earlier. The trial court denied their motion to amend because (1) amending the answer would be futile because the JVA expressed the parties' intent as to how Liddiard and Davern wanted to distribute the property if their relationship ended, and (2) the motion was untimely.

The JVA provided that the "Joint Venture shall be dissolved upon the happening of any of the following events . . . (c) The breakup of the personal relationship of the parties." CP at 11. The JVA also provided that, should the parties' relationship end before either party's death, Davern would reimburse Liddiard for labor contributions and expenses and she would retain the joint venture's remaining assets. And, "Tim Liddiard agrees to execute, acknowledge and deliver any and all documents and instruments necessary to complete the transfer of property back to Gail Davern in accordance with this agreement." CP at 11.

The parties agree that Liddiard and Davern's personal relationship ended in October 2003. In their motion to amend, Liddiard and Shauck asserted that Liddiard and Davern's relationship termination triggered action under the JVA because it initiated any obligation to return the property to Davern. Davern did not file her action to enforce the obligation until October 29, 2010, seven years after their relationship ended.

But any breach of the JVA's terms did not occur until April 16, 2010, when Liddiard and Shauck refused to sign the quit claim deed as Davern requested, pursuant to the JVA. The JVA did not dissolve upon the termination of the parties' relationship; the JVA explained that the *joint venture* dissolved upon the relationship's termination.

Because Davern filed her action just months after Liddiard and Shauck breached the JVA by rejecting Davern's request to sign the quit claim deed, she filed her action well within the six-year statute of limitations. Liddiard and Shauck filed their motion to amend weeks after the trial court granted Davern's summary judgment motion, and they conceded that they had no explanation for filing it so late and that it would create extra work and costs for Davern. Therefore, Liddiard and Shauck cannot demonstrate that the trial court manifestly abused its discretion in denying the motion to amend.

### III. ATTORNEY FEES

Liddiard and Shauck next argue that (1) Davern's attorney fees award was unwarranted and improper under law and equity; (2) Oregon law does not support an attorney fees award; and (3) even if Davern is entitled to attorney fees, fees incurred in prosecution of claims against the timber companies should not have been included. We disagree.

A. Trial Court's Award of Attorney Fees

The parties assert that the trial court awarded attorney fees to Davern under the common law principle of bad faith and under an Oregon fee shifting statute that provides for fees for defenses made without objectively reasonable basis. It also awarded attorney fees and costs to Davern for her efforts to obtain title from now-defunct timber companies.

1. Bad faith[5]

We review the reasonableness of a trial court's award of attorney fees for an abuse of discretion. *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 114 Wn.2d 677, 688, 790 P.2d 604 (1990). A trial court does not abuse its discretion unless it exercises its discretion in a manifestly unreasonable manner or on untenable grounds or reasons. *Progressive Animal Welfare Soc'y*, 114 Wn.2d at 688-89.

Bad faith litigation can warrant the equitable award of attorney fees. *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 798, 557 P.2d 342 (1976). The trial court, though, must specifically find bad faith in order to support its attorney fees award. *See In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 267, 961 P.2d 343 (1998). If it made such findings, we uphold the award so long as substantial evidence in the record supports the findings. *Tradewell Group, Inc. v. Mavis*, 71 Wn. App. 120, 127, 857 P.2d 1053 (1993). Substantial evidence is the quantum of evidence sufficient to persuade a reasonable person the premise is true. *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000).

---

[5] We need not apply Oregon law in analyzing attorney fees awarded under common law notions of equity.

The trial court found that Liddiard and Shauck acted in bad faith by refusing to comply with the JVA. Substantial evidence supports this finding. Liddiard signed the JVA, but he and Shauck refused to quit claim the deed to Davern. Liddiard and Shauck instead asserted that Liddiard was entitled to an equitable partition of the Naselle property because he contributed to the improvement of the Utah home before Davern sold it. But Liddiard and Shauck did not file a counterclaim for contribution; nor did they petition to bring Davern and Liddiard's jointly-acquired community assets before the trial court.

Liddiard and Shauck also claimed at the trial court that Davern pressured Liddiard to sign the JVA, so that Liddiard and Davern could drive to South Bend to record the deed. This account is inaccurate, though, because Liddiard signed the JVA a day before they recorded the deed. In sum, the trial court found that Liddiard and Shauck acted in bad faith by failing to sign the JVA. Substantial evidence supports these findings, enough to persuade a reasonable person that Liddiard and Shauck acted in bad faith and raised defenses with no objectively reasonable basis. Therefore, the trial court did not abuse its discretion in awarding attorney fees based on bad faith against Liddiard and Shauck.[6] *See Progressive Animal Welfare Soc'y*, 114 Wn.2d at 688-89.

---

[6] Because the trial court's finding supports an award of attorney fees on the common law basis of equity and the trial court did not explicitly rely on the Oregon statute, we do not address attorney fees under Oregon law.

2. Costs associated with the timber companies

Liddiard and Shauck also argue that they need not pay Davern for fees she incurred in the prosecution of her claims against two now-defunct timber companies.[7] But had Liddiard and Shauck signed the quit claim deed—as required under the JVA—Davern would not have incurred the substantial attorney fees and costs associated with bringing her suit to quiet title, including being forced to serve the defunct timber companies by publication as required by law upon bringing a quiet title suit. *See* RCW 4.28.100. The trial court found that had Liddiard and Shauck not acted in bad faith, Davern would not have incurred these extra expenses. Accordingly, the trial court did not abuse its discretion in awarding attorney fees based on these additional costs.

B. Attorney Fees on Appeal

Davern seeks additional fees under CR 11, RCW 4.84.185, and RAP 18.9, to cover costs incurred on appeal. We decline her request.

CR 11 deters "baseless filings" and "abuses of the judicial system." *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 219, 829 P.2d 1099 (1992). CR 11 imposes duties on an attorney to (1) conduct a reasonable inquiry into the facts supporting an action; (2) conduct a reasonable inquiry into the law to ensure that the pleading is warranted by existing law, or a good faith argument for the extension, modification, or reversal of existing law; and (3) avoid filing the pleading for any improper purpose, such as delay, harassment, or increasing the litigation costs. *Miller v. Badgley*, 51 Wn. App. 285, 300, 753 P.2d 530, *review denied*, 111 Wn.2d 1007 (1988).

---

[7] The trial court entered a default judgment against the defunct mills in June 2011, and in September quieted title in Davern, clearing any claim of the timber companies.

We decline to impose CR 11 sanctions because CR 11 applies only to superior court actions. CR 1 ("These rules govern the procedure in the superior court in all suits of a civil nature.").

Davern also requests attorney fees under RCW 4.84.185 and RAP 18.9 for Liddiard and Shauck's frivolous, baseless bad faith appeal. An appeal is frivolous if we are convinced that it presents no debatable issues on which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal. *In re Marriage of Foley*, 84 Wn. App. 839, 847, 930 P.2d 929 (1997). We exercise our discretion and deny Davern's request for attorney fees because Liddiard and Shauck's arguments on appeal present an issue on which reasonable minds may differ.[8]

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, A.C.J.

We concur:

Hunt, J.

Bjorgen, J.

---

[8] We acknowledge that our decision not to award appellate attorney fees may appear inconsistent with our holding affirming the trial court's attorney fees award. Though we view the matter differently than the trial court, we believe that the trial court acted within its discretion in awarding attorney fees.